**No. 24-3177, 24-3340**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

MAKUEEYAPEE D. WHITFORD

*Plaintiff-Appellant*,

v.

JIM SALMONSEN, et al.,

*Defendant-Appellees*.

On Appeal from the United States District Court
for the District of Montana
Cause No. 22-70-H-BMM-JTJ
Hon. Brian Morris

_____

**APPELLEES' ANSWERING BRIEF**

_____

Blake Robertson Koemans
State of Montana
302 N. Roberts St.
Helena, MT 59620-1440
406-444-3029
Blake.Koemans2@mt.gov

*Attorneys for Appellee-Cross-Appellant*
Jim Salmonsen
Brian Gootkin

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ........................................................................... 1

JURISDICTIONAL STATEMENT ......................................................... 3

ISSUES PRESENTED....................................................................... 3

STATEMENT OF THE CASE............................................................... 4

    I.    Factual Background................................................................. 4

    II.    Procedural Background ......................................................... 9

SUMMARY OF THE ARGUMENT ....................................................... 12

STANDARD OF REVIEW ................................................................. 14

ARGUMENT ................................................................................. 15

    I.    The district court correctly determined that the clear conduct policy did not substantially burden the Appellant's ability to be selected as the pipe carrier or part of the sweat setup crew. .................................. 17

        a.    Eligibility to be selected for sweat setup crew ......................... 17

        b.    Eligibility to be elected as a pipe carrier.................................. 20

    II.    The district court correctly determined that the Clear Conduct policy is narrowly tailored to achieve a compelling governmental interest. .22

        a.    Compelling governmental interest........................................... 23

        b.    The district court correctly determined that the clear conduct policy satisfies the least restrictive means standar. .................. 25

    III.    Any harm to the Appellant's ability request or attend a powwow is entirely speculative, raised for the first time on appeal, and should be rejected ....................................................................... 27

CONCLUSION....................................................................................28

CERTIFICATE OF COMPLIANCE FOR BRIEFS ...............................................30

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Washington*, 16 F.4th 170 (6th Cir. 2021) ..........................................20

*Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019) ............22

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ....................................23

*Children's Hosp. Med. Ctr. v. California Nurses Ass'n*,

    283 F.3d 1188 (9th Cir. 2002) ........................................................................14

*Cutter v. Wilkinson*, 544 U.S. 709 (2005)................................................................23

*Frudden v. Pilling*, 877 F.3d 821 (9th Cir. 2017) ....................................................14

*Fuqua v. Ryan*, 890 F.3d 838 (9th Cir. 2018) ..........................................................23

*Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009)...................................14

*Greene v. Solano Cty. Jail*, 513 F.3d 982 (9th Cir. 2008) .......................................23

*Greenhill v. Clarke*, 944 F.3d 243 (4th Cir. 2019) ..................................................22

*Guru Nanak Sikh Soc'y v. County of Sutter*, 456 F.3d 978 (9th Cir. 2006) ............17

*Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114 (9th Cir. 2013).... 26, 27

*Holt v. Hobbs*, 574 U.S. 352 (2015) .............................................................. passim

*Hudson v. Palmer*, 468 U.S 517 (1984)...................................................................24

*Int'l Church of the Foursquare Gospel v. City of San Leandro*,

    673 F.3d 1059 (9th Cir. 2011) ........................................................................17

*Johnson v. Baker*, 23 F.4th 1209 (9th Cir. 2022) ....................................... 15, 20, 25

*Jones v. Carter*, 915 F.3d 1147 (7th Cir. 2019)......................................................22

*Jones v. Slade*, 23 F.4th 1124 (9th Cir. 2022)........................................ 14, 17, 21, 22

*Midrash Shephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004)......17

*Momox-Caselis v. Donohue*, 987 F.3d 835 (9th Cir. 2021)....................................28

*O'Lone v. Est. of Shabazz*, 482 U.S. 342 (1987) ....................................................21

*Olsen v. Idaho State Bd. Of Med.*, 363 F.3d 916 (9th Cir. 2004) ...........................14

*Ramirez v. Collier*, 595 U.S. 411 (2022) ........................................................ 15, 23

*San Jose Christian Coll. V. City of Morgan Hill* 360 F.3d 1024 (9th Cir. 2004)....17

*Saud v. Days*, 36 F.4th 949 (9th Cir. 2022) ........................................................25

*SEC v. Cheney Corp.*, 318 U.S. 80 (1943)..........................................................22

*Shakur v. Schriro*, 514 F.3d 878  (9th Cir. 2008) .................................................23

*Thomas v. Review Bd. Of the Ind. Employment Sec. Div.*,

    450 U.S. 707 (1981)................................................................................ 18, 19

*Wallace v. Princess Cruises, Inc.*, 306 F.3d 827 (9th Cir. 2002) ...........................14

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) .................................. passim

*Washington v. Harper*, 494 U.S. 210 (1990)........................................................24

## Statutes

28 U.S.C. § 1291 ................................................................................................3

28 U.S.C. § 1331 ................................................................................................3

42 U.S.C. § 2000cc ......................................................................... 1, 15, 23, 26

## Rules

Fed. R. App. P. 4 ...............................................................................................3

Fed. R. Civ. P. 56 .............................................................................................14

## INTRODUCTION

The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), prohibits any government from imposing "any substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a). A government may, however, substantially burden religious exercise where it can demonstrate that the burden is in furtherance of a compelling government interest and is the least restrictive means to achieve that interest. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2)).

Montana State Prison ("MSP") maintains policies and procedures meant to protect institutionalized person's religious rights while ensuring the safety of prison staff and prison operations. Several MSP policies are relevant to this appeal. First, MSP has created the Religious Activities Center ("RAC") within the prison to "cultivate authentic religious experience[s]" and to provide inmates with a space to "cultivate and restore a personal moral center essential for a safer facility and successful reintegration into society." 2-ER-90, 2-ER-112 (hereinafter "RAC Policy"). Second, MSP maintains a specific set of policies for the practice of Native American religious activities, whether they are held within or outside of the RAC. 2-ER-117-125, 3-ER-340-349 (hereinafter "NARP Policy"). Third, MSP's general policy regarding special events applies to powwows within the prison. 2-

ER-126-131, 3-ER-350-366. Primarily at issue in this case, an inmate must have six months of clear conduct to participate some activities governed by the RAC, NARP, and Special Events policies ("Clear Conduct policy"). 1-ER-005, 2-ER-060.

During his time at MSP, Plaintiff-Appellant Makueeyapee Whitford has amassed an extensive record of additional criminal convictions and disciplinary infractions. 1-ER-003, 2-ER-171-175, 3-ER-302; *see generally* 1-SER-2 through 2-SER-529. As a result of his behavior, the Appellant has spent much of his time at MSP in restrictive housing, which is generally reserved for inmates who pose an unusually high security risk. 2-ER-278. Additionally, the Appellant's behavior has, for the most part, left him unable to participate in some activities governed by the relevant policies.

The Appellant challenged both the RAC and NARP Policies as violating his rights under RLUIPA. On cross-motions for summary judgment, the district court determined that, as applied to the Appellant's religious practices, the policies did not pose a substantial burden, there was no religious practice to burden, and when a substantial burden was placed on the Appellant, that burden was narrowly tailored to a compelling state interest. 1-ER-009-021. The district court,

accordingly, granted summary judgment in favor of the State Defendants.[1] In doing so, the district court noted "the thing stopping [Appellant] from doing everything he wants to do ". . . "is his unwillingness to follow the general rules of the prison." 1-ER-015.

## JURISDICTIONAL STATEMENT

The Appellant's claims involve questions of federal law. Accordingly, the district court properly had jurisdiction under 28 U.S.C. § 1331. This court has jurisdiction over the final decisions of the district courts in this circuit under 28 U.S.C. § 1291. The district court entered final judgment on April 10, 2024. The Appellant timely filed his notice of appeal on May 10, 2024, under Fed. R. App. P. 4. The State timely filed its notice of cross-appeal on May 24, 2024, under Fed. R. App. P. 4(a)(3). This appeal is from a final order disposing of all of the parties' claims.

## ISSUES PRESENTED

1. Whether the district court erred when it determined that the Clear Conduct policy did not impose a substantial burden on the Appellant's ability to be elected as the ceremonial pipe carrier where no MSP policy prohibited the Appellant's election to that role.

2. Whether the district court erred when it determined that the Clear Conduct policy did not substantially burden the Appellant's ability to be

_____

[1] The district court found in favor of Appellant regarding MSP's policy outright banning an inmate's ability to carry a personal pipe for religious practice. MSP has determined not to challenge the district court's ruling on that issue on appeal.

a part of the sweat lodge setup crew where the policy did not require the Appellant to violate his religious beliefs.

3. Whether the district court erred when it found that the Clear Conduct policy was properly applied to the Appellant's ability to attend drum practice because it was sufficiently supported by a compelling interest and the least restrictive to achieve that interest.

4. Whether the district court erred when it determined that the Clear Conduct policy did not substantially burden the Appellant's ability to attend powwow when there was no powwow available for the Appellant to attend.

## STATEMENT OF THE CASE

## I. Factual Background

The Appellant is an inmate of MSP currently serving a sixty-year sentence for the crime of deliberate homicide. 2-ER-277, 3-ER-301, 3-ER-331, 3-ER-367. Before arriving at MSP, the Appellant was housed at the Crossroads Correctional Center in Shelby, Montana. 2-ER-278-181, 3-ER-303. The Appellant had to be transferred out of Crossroads because he stabbed another inmate. 2-ER-278, 3-ER-303. Since his arrival at Montana State Prison in November 2016, the Appellant has amassed over 180 disciplinary infractions, including staff assaults, conspiring to commit staff assaults, and weapons possession. 1-ER-003, 2-ER-071, 2-ER-186, 2-ER-277-280, 3-ER-302. On March 16, 2020, while incarcerated, Appellant was convicted for assaulting a Montana State Prison staff member with bodily fluids. 2-ER-277, 3-ER-302, 3-ER-331. In addition to his 2020 conviction, the Appellant's disciplinary history demonstrates a mostly unbroken pattern of violent behavior

including more than fifteen instances of threatening MSP staff, two instances of conspiring to assault Montana State Prison Staff, two instances of possession of a weapon, and sixteen assaults on Montana State Prison Staff. 1-ER-003, 2-ER-077, 2-ER-086, 2-ER-277-278, 3-ER-002; *see generally* 1-SER-002 through 2-SER-529.

The Montana State Prison is divided into five separate housing compounds: maximum-security ("RHU"), high-security ("high-side"), low-security ("low-side"), the Work and Reentry Center ("WRC"), and the Martz Diagnostic Intake Unit ("MDIU"). 2-ER-279, 3-ER-004. Each compound has a unique set of purposes and carries its own set of risks. For instance, the security measures required to safely house high-side inmates are significantly more stringent than those required for low-side inmates. 2-ER-280-281. High-side inmates are not allowed to be on or participate in activities taking place on the low-side for any reason. 2-ER-280, 2-ER-286, 3-ER-305.

Prison policy governs which of the five units an inmate is assigned to. 2-ER-279-280. Inmates are categorized and placed into one of the five housing units based, in part, upon that inmate's behavior while incarcerated, compliance with treatment and programming, and the severity and recency of their crime. 2-ER-279-280. Because of the severity of the Appellant's crimes – assault, stabbing, and deliberate homicide – and because of his nearly unbroken string of infractions

while housed at MSP, Appellant is categorized into RHU housing – the most restrictive unit. 2-ER-280. Although categorized into the RHU, MSP has determined it is appropriate to place the Appellant into the high-side general population, albeit under close custody. 2-ER-280. Due to the risk he poses to other inmates, however, Appellant is still required to have an individual cell. 2-ER-280.

 Irrespective of the housing compound an inmate is assigned to, MSP policy provides all inmates with the opportunity to engage in the exercise of their religion. 2-ER-281-282; 3-ER-040-049. Concerning inmates, like the Appellant, who are part of a Native American congregation or follow the religious customs of Native American culture, MSP maintains policies specifically designed to facilitate those belief systems. The NARP policy provides inmates housed at MSP opportunities to participate in the Native American religious practices of sweat lodge, pipe ceremony, drum group, smudging, and talking circle. 3-ER-451-460. To allow a safe space for congregants to exercise their religious traditions, MSP maintains the RAC. As noted, activities in the RAC are subject to a specific set of rules meant to address the unique security concerns raised during communal events. 3-ER-446.

The Appellant is "a member of the Blackfeet Indian Nation and has a sincere belief in the Native American way of life according to his spirituality and religion." 2-ER-86. As part of his sincerely held religious beliefs, the Appellant wishes to participate in four religious activities that take place at MSP: (1) sweat

lodge set-up crew, (2) ceremonial pipe carrier selection, (3) drum group, and (4) powwow. 1-ER-003-004; 2-ER-077. Except for powwows, these religious activities, as well as an inmate's eligibility to participate in them, are governed by the RAC and NARP policies. 2-ER-117-125, 2-ER-245, 2-ER-281.

Every Saturday, MSP provides two opportunities for inmates to participate in a sweat lodge ceremony. 2-ER-282. To provide all interested and eligible inmates with an opportunity to participate, the housing units operate on a rotating schedule. 2-ER-282-283. On the first Saturday, a sweat ceremony is held for low-side units A and B, and a separate ceremony is held for high-side unit 1. 2-ER-282. The following Saturday, a ceremony is held for low-side units C and D, and a separate ceremony for high-side unit 2. 2-ER-283. The rotation then repeats. 2-ER-283.

The rotating sweat ceremonies are held in the RAC and are subject to both the RAC and NARP policies. The RAC policy provides for general rules of behavior for inmates participating in religious services in the RAC, including special rules for sweat ceremonies. 3-ER-446-447. In addition to the RAC policy, the NARP policy contains extensive and detailed rules governing sweat ceremonies. 3-ER-453-456. Under the NARP policy, sweat ceremonies are to be setup by a group of four inmates selected from a list of all interested inmates by RAC staff. 3-ER-453. An inmate may request to be considered for selection on the

sweat setup crew when a vacancy becomes available. 3-ER-453. To be placed on the list of eligible setup crew members, however, an inmate must abide by the Clear Conduct policy. 3-ER-453.

Pipe ceremonies are available to inmates at MSP. 1-ER-005, 3-ER-454, 457. Pipe ceremonies take place during sweat ceremonies, and additional pipe ceremonies are held separately from sweat ceremonies. 3-ER-322. Like sweat ceremonies, pipe ceremonies are held in the RAC. 3-ER-322. Pipe ceremonies are open to all inmates, and attendance is not subject to the Clear Conduct Policy. 3-ER-322. In accordance with traditional Native American practices, inmates are selected to carry the sacred pipe during pipe ceremonies. 3-ER-454. At any one time, two inmates on the high-side and two inmates on the low-side are selected as pipe carriers. 3-ER-321. Pipe carriers are responsible for handling the sacred pipe during the pipe ceremony and preparing and loading the tobacco mixture in advance of the ceremony. 2-ER-120, 3-ER-321-322; 3-ER-454-455. The members of the Native American congregations of each unit select the pipe carriers for that unit. 3-ER-321. Neither the RAC, nor the NARP policies explicitly require that an inmate conform with the Clear Conduct policy to be eligible for selection as the pipe carrier. 1-ER-011, 2-ER-120-121, 2-ER-123-124.

During sweat ceremonies, MSP provides the opportunity for members of the Native American congregation to participate in drum group. 3-ER-455.

**APPELLEES' ANSWERING BRIEF - 8**

Additionally, outside of sweat ceremonies, members of the drum group have the opportunity to attend drum practice sessions. 3-ER-459. To be eligible for attendance at drum practice, an inmate must comply with the Clear Conduct policy. 3-ER-455.

Powwows at MSP are not considered religious activity and are, therefore, not subject to the NARP policy. 2-ER-293. Instead, a powwow is considered a special activity, governed by MSP Procedure 5.5.101. 2-ER-293. Under MSP Procedure 5.5.101, an inmate would need to comply with the Clear Conduct policy in order to attend a special event. 2-ER-126-131, 2-ER-286, 3-ER-323-324. Special events under 5.5.101, including powwows, are subject to general MSP rules including the restrictions on high-side inmates being on low-side for any reason. 2-ER-286-287.

## II.    Procedural Background

In 2023, the Appellant filed a complaint challenging the validity of MSP's policies. 1-ER-002-003. In his complaint, the Appellant claimed that MSP's policies illegally burden the exercise of his religious rights in violation of RLUIPA. 1-ER-004. The Appellant argued that the Clear Conduct policy substantially burdened his ability to participate in drum practice, attend powwow, be eligible for selection as a pipe carrier, and be eligible for selection to sweat setup crew. 1-ER-004.

The parties both submitted motions for summary judgment. 2-ER-060; 2-ER-269. The Appellant argued that the Clear Conduct policy placed a substantial burden on his religious rights and that the policy is not the least restrictive means to achieve a compelling government interest. 2-ER-060-075. In his motion, the Appellant agreed that MSP has a compelling interest in the Clear Conduct policy. 2-ER-063.

Appellees argued that the clear conduct policy did not impose a substantial burden on the Appellant's religious rights because it does not require the Appellant to choose between following MSP rules or following the tenets of his religion. 2-ER-269-270, 2-ER-296. Additionally, Appellees argued that the Clear Conduct policy ensures that only inmates who demonstrate exemplary trustworthiness are allowed to participate in activities with a heightened security risk. 2-ER-285-286, 3-ER-451.

Appellees further argued that, even if the Clear Conduct policy constituted a substantial burden under RLUIPA, the policy was the least restrictive means by which the compelling interest of prison staff and inmate safety could be achieved. 2-ER-269-270, 2-ER-290-296. In support of their motion, Appellees provided the affidavits of Terrie Stefalo, the Religious Activities Coordinator at MSP, and Billie Reich, the Grievance Manager at MSP. 3-ER-318-339. Both Stefalo and Reich have extensive experience with the MSP's policies and procedures governing

**APPELLEES' ANSWERING BRIEF - 10**

religious activities, and both testified to the importance of the Clear Conduct policy. 3-ER-328-329; 3-ER-335-337. Stefalo and Reich also have experience with the Appellant and testified to the unique security risks the Appellant poses and his extensive history of dangerous and unpredictable behavior. 3-ER-324; 3-ER-331-333.

On December 20, 2023, the district court granted in part and denied in part both parties' motions. 1-ER-002. As a threshold matter, the court assumed that all of the activities the Appellant wishes to participate in are religious activities protected under RLUIPA. 1-ER-008. Then, under its RLUIPA analysis, the court first found that the Clear Conduct policy did not impose a substantial burden on the Appellant's ability to be elected as pipe carrier because the Clear Conduct policy did not prevent the Appellant from being elected by his congregation to that position. 1-ER-011-012. Next, the court determined that the Clear Conduct policy imposed, at worst, a short-term delay in the Appellant's ability to practice some aspects of his religion. The court found that any such delay caused, however, was due to the Appellant's unwillingness to conform to the general rules of the prison. 1-ER-015-016. Under the court's substantial burden analysis, it also determined that the Clear Conduct policy did not impose a substantial burden on the Appellant's ability to attend a powwow because there was no powwow scheduled that the Appellant had been prevented from attending and the Appellant presented

only speculation about what might happen should one be held in the future. 1-ER-012-013.

Because the Clear Conduct policy constituted an outright ban on the Appellant's ability to attend drum practice group, the district court assumed that it imposed a substantial burden. 1-ER-017. The court went on, however, to find that the policy was the least restrictive means by which MSP could achieve the compelling governmental interest of institutional safety. 1-ER-018-020.

## SUMMARY OF THE ARGUMENT

The Clear Conduct policy does not substantially burden the Appellant's eligibility to be selected for sweat setup crew, or ability to be selected to the ceremonial position of pipe carrier. As the district court correctly noted, the only thing prohibiting the Appellant from being selected for the sweat setup crew is his persistent inability to refrain from engaging in violent behavior. Further, by the Appellant's own admission, the Clear Conduct policy does not apply to eligibility for selection as pipe carrier. Even were the policy to apply to that practice, the Clear Conduct policy does not mandate behavior that the Appellant is religiously prohibited from engaging in or prohibit behavior that the Appellant is religiously mandated to observe. The policy simply prevents violent, disruptive, and untrustworthy activities.

**APPELLEES' ANSWERING BRIEF - 12**

Even where the Clear Conduct policy does substantially burden the Appellant's religious practices, the policy is nonetheless allowable under RLUIPA. The Appellant does not contest, because it is not contestable, that MSP has a compelling interest in the safety of prison staff and inmates and institutional security. This interest is particularly poignant in the context of out-of-cell communal activities such as drum practice group. The Appellees provided testimony and evidence demonstrating the specific security risks posed by communal events, and the compelling interest in knowing that inmates participating in those activities are trustworthy and safe. Finally, although the standards of RLUIPA are exacting, the district court gave proper deference to the extensive experience and long-time expertise of the MSP employees who testified that the Clear Conduct policy was the least restrictive means by which MSP could achieve the compelling interests at issue.

The Appellant now argues, for the first time on appeal, that the restriction of high side inmates from being on the low side poses a substantial burden to his ability to attend a powwow. The Court should summarily reject this argument because the Appellant explicitly chose not to make it to the district court. Furthermore, the Appellant now argues that it is his ability to request a powwow on the high side that is burdened by the Clear Conduct policy. In addition to being a new argument on appeal, the Clear Conduct policy only restricts an inmate's

ability to work on and attend a powwow – it is silent on the ability to request a powwow.

The district court correctly found that there were no genuine issues of material fact and that the Appellees were entitled to judgment that the Clear Conduct policy is acceptable under RLUIPA. This Court should affirm.

## STANDARD OF REVIEW

A district court's decision to grant or deny a motion for summary judgment, or cross-motions for summary judgment, is reviewed de novo. *Jones v. Slade*, 23 F.4th 1124, 1133 (9th Cir. 2022) (citing *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009)); *see also Children's Hosp. Med. Ctr. v. California Nurses Ass'n*, 283 F.3d 1188, 1190-91 (9th Cir. 2002). When reviewing a decision granting or denying summary judgment, the court must determine whether there are any genuine issues of material fact and whether the district court properly applied the relevant substantive law. *Wallace v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002). The reviewing court must view the evidence in the light most favorable to the nonmoving party. *See Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017) (citing Fed. R. Civ. P. 56(a); *Olsen v. Idaho State Bd. Of Med.*, 363 F.3d 916, 922 (9th Cir. 2004)).

## ARGUMENT

Under RLUIPA, the government is prohibited from imposing any substantial burden on the religious exercise of persons residing in or confined to an institution, including state prisons, unless the burden is the least restrictive means to further a compelling government interest. 42 U.S.C. § 2000cc-1(a). When bringing a claim under RLUIPA, a plaintiff bears the initial burden of showing that their claim is "sincerely based on a religious belief and not some other motivation." *Ramirez v. Collier*, 595 U.S. 411, 424-25 (2022) (quoting *Holt v. Hobbs*, 574 U.S. 352, 356-358 (2015)) (internal quotations omitted). The district court in this case assumed that all of the activities the Appellant claims are implicated by the Clear Conduct policy are religious exercises. 1-ER-008-009 (citing *Johnson v. Baker*, 23 F.4th 1209, 1214 (9th Cir. 2022)). The Appellees do not contest this ruling on appeal and, as a threshold matter, concede that participation in sweat setup crew, being selected as pipe carrier, participation in drum practice group, and attending powwow are religious exercises as that term is used in RLUIPA.

The clear conduct policy does not substantially burden the Appellant's ability to be selected as a pipe carrier or participate in the sweat setup crew. As the district court noted, the Clear Conduct policy does not apply to eligibility for the pipe carrier position. The only thing preventing the Appellant from being selected as pipe carrier is that the Native American congregation, consistent with Native

American religious customs and traditions, selects the pipe carrier and has already selected another member. Although the Clear Conduct policy does affect the Appellant's ability to participate in sweat setup crew, the policy in no way presents the Appellant with the impossible choice of deciding to follow the tenets of his sincerely held religious beliefs or to follow a prison policy requiring he violate those beliefs.

To the extent that the Clear Conduct policy does substantially burden the Appellant's ability to participate in some exercise of the Appellant's religious beliefs, the district court correctly determined that it was the least restrictive means by which a compelling government interest could be achieved. It is undisputed, and the Appellant has always agreed that prison security represents a compelling government interest. Communal activities, religious or otherwise, present special opportunities for misconduct, contraband trafficking, sexual assault, and violent outbursts. Prison staff require that individuals participating in those activities demonstrate a heightened level of trustworthiness. The Clear Conduct policy is the least restrictive means by which prison officials can ensure that inmates exhibiting dubious or concerning behavior are not allowed a greater opportunity to act in violent or dangerous ways.

I.      **The district court correctly determined that the clear conduct policy did not substantially burden the Appellant's ability to be selected as the pipe carrier or part of the sweat setup crew.**

A party seeking redress under RLUIPA bears the burden of showing that a government defendant has substantially burdened their religious exercise. *Jones*, 23 F.4th at 1139. Although RLUIPA provides greater protection for an inmate's religious exercise than those afforded by the First Amendment, the substantial burden standard under RLUIPA is the same as under the First Amendment. *Int'l Church of the Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011). A substantial burden is one that is "oppressive to a significantly great extent" and imposes "a significantly great restriction or onus" upon the claimant's religious exercise. *Warsoldier*, 418 F.3d at 995 (quoting *San Jose Christian Coll. V. City of Morgan Hill* 360 F.3d 1024, 1034 (9th Cir. 2004) (internal quotations omitted)). By contrast, a policy that places a mere inconvenience on an inmate's religious exercise does not amount to a substantial burden. *Guru Nanak Sikh Soc'y v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (citing *Midrash Shephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)).

a.      **Eligibility to be selected for sweat setup crew.**

The Appellant argues that the district court erred by finding that the Appellant was not substantially burdened because other religious activities were

**APPELLEES' ANSWERING BRIEF - 17**

available to the Appellant and because sweat setup crew is an extra activity not available to all inmates. The Appellant's argument is an incomplete understanding of the district court's decision. It ignores the most important finding therein – that the Clear Conduct policy is not the reason the Appellant cannot be selected for sweat setup. The gravamen of the Appellant's argument is that he cannot comply with the requirements of his religion and with the Clear Conduct policy. This contention is undercut by both the undisputed facts in this case and the applicable law.

A substantial burden exists where the state denies a benefit to an inmate because of conduct mandated by that inmate's religious belief and thereby puts pressure on the inmate to violate his beliefs. *Warsoldier*, 418 F.3d at 995 (citing *Thomas v. Review Bd. Of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981). *Warsoldier* demonstrates the flawed logic of the Appellant's argument. In *Warsoldier*, Billy Soza Warsoldier challenged a California Department of Corrections policy that prohibited male inmates from growing their hair longer than three inches. 418 F3.d at 992. Warsoldier, a Cahuilla Native American, believed that a person may only cut their hair upon the death of a loved one. *Id.* at 991-92. Warsoldier refused to abide by the policy and was punished for his infractions. *Id.* This Court found that Warsoldier's religious exercises were substantially burdened because "putting substantial pressure on an adherent to

modify his behavior and to violate his beliefs infringes on the free exercise of religion." *Id.* at 996 (quoting *Thomas*, 450 U.S. at 718) (internal quotations omitted).

The policy at issue in *Warsoldier*, required the petitioner to choose between following prison policy, or directly violating his religious beliefs. 418 F.3d at 996. Unlike in *Warsoldier*, compliance with the Clear Conduct policy would not require the Appellant to "modify his behavior and violate his belief." *Thomas*, 450 U.S. at 718. For instance, the Appellant's violations of the Clear Conduct policy have taken the form of kneeing a corrections officer in the ribs and pushing him against a wall (1-SER-18); throwing raw feces on prison staff (1-SER-028 and 1-SER-103); spitting on staff (1-SER-116) and other inmates (2-SER-358); threatening to rape female staff members (1-SER-193); and possessing a homemade shank (1-SER-59). This violent, egregious, and untrustworthy behavior is a small excerpt of the Appellant's constant conduct during his time at MSP. *See generally,* 1-SER-002 through 2-SER-529. Unless his sincerely held religious beliefs require this violent, aggressive, and dangerous behavior — which they do not — the Clear Conduct policy does not require the Appellant to choose between complying with MSP regulations and the tenets of his religion. Accordingly, the policy does not substantially burden the exercise of his religion.

This same distinction is present in many of the cases the Appellant cites. *See Holt*¸ 574 U.S. at 358-59 (challenge to a prison policy that required a Muslim prisoner to shave his beard); *Johnson*, 23 F.4th at 1213 (challenge to a prison policy that restricted the use of scented oils during personal prayer); *Ackerman v. Washington*, 16 F.4th 170, 181-85 (6th Cir. 2021) (considering a challenge to prison dietary policies that conflicted with a prisoner's religious diet and describing a substantial burden as one that "put[s] a prisoner to the choice of either 'engag[ing] in conduct that seriously violates his religious beliefs' or ' fac[ing] serious disciplinary action.'" (quoting *Holt*, 574 U.S. at 361)).

Standing in stark contrast to the policies challenged in the Appellant's cited cases, the Clear Conduct policy merely requires the Appellant to not engage in violent, obstructive, and untrustworthy behavior. Nothing about the Clear Conduct policy requires the Appellant to choose to violate his religious beliefs. The district court correctly found that if the Appellant followed the Clear Conduct policy, he would be eligible to participate in the sweat setup crew — an activity that requires prison staff to place heightened trust in inmates. 1-ER-015.

### b.     Eligibility to be elected as a pipe carrier.

The Clear Conduct policy does not substantially burden the Appellant's ability to be elected as the ceremonial pipe carrier because it does not apply to that activity. 1-ER-011, 3-ER-343. As the district court noted, the Appellant's ability to

be the pipe carrier is controlled by two things: (1) a vacancy in the position, and (2) his election by his congregation. The Appellant himself appears to acknowledge that the Clear Conduct policy does not explicitly apply to his ability to be pipe carrier. 2-ER-082. In his Declaration in Support of his Motion for Summary Judgment, the Appellant described the Clear Conduct policy's application as "an unwritten rule and custom," and stated "I have not been able to identify any policy requiring 6 months of clear conduct although I know this is the unwritten rule." 2-ER-082. The Appellant's reference to custom and policy is simply insufficient to carry his burden of showing that a government policy substantially burdens his religious exercise. *Warsoldier*, 418 F.3d at 994.

The Appellant argues that because the parties acted as though the Clear Conduct policy applied to his ability to be elected as pipe carrier, the district court erred in its interpretation of the NARP policy's guidelines regarding pipe carrier election. Even if this Court agrees with the Appellant on that point, however, the Appellant has again failed to demonstrate how the Clear Conduct policy "put[s] substantial pressure on [him] to change to modify his behavior and to violate his beliefs." *Id.* at 996 (internal quotations omitted). Assuming the Clear Conduct policy applied to election as pipe carrier, the policy does not "forbid[] conduct that [Appellant] believes he is religiously compelled to do," *Jones*, 23 F.4th at 1140 (citing *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 344-45 (1987) (superseded by

**APPELLEES' ANSWERING BRIEF - 21**

statute on other grounds)), nor does it "compel [Appellant] to do that which he believes he is religiously forbidden from doing," *Jones*, 23 F.4th at 1140 (citing *Holt*, 574 U.S. at 355, 359), nor does it "encourage [Appellant] to do that which he is religiously prohibited or discouraged from doing," *Jones*, 23 F.4th at 1140 (citing *Greenhill v. Clarke*, 944 F.3d 243, 250-51 (4th Cir. 2019)), and it does not "discourage [Appellant] from doing that which he is religiously compelled or encouraged to do." *Jones*, 23 F.4th at 1140 (citing *Jones v. Carter*, 915 F.3d 1147, 1150-51 (7th Cir. 2019)). Simply put, even if the Clear Conduct policy applied to election as pipe carrier, the district court did not err in finding that it does not substantially burden the Appellant's religious rights. Unlike the policies at issue in cases finding a substantial burden, the Clear Conduct policy does not implicate the Appellant's ability to participate in any religious activity. For that reason, if this Court disagrees with the district court, it should nonetheless affirm. *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 892 (9th Cir. 2019) (quoting *SEC v. Cheney Corp.*, 318 U.S. 80, 88 (1943) (a reviewing court will affirm a district court's correct ruling, even when arrived at under with incorrect reasoning)).

## II. The district court correctly determined that the Clear Conduct policy is narrowly tailored to achieve a compelling governmental interest.

When a prisoner successfully demonstrates that their religious exercise has been substantially burdened, the government must demonstrate that the challenged

policy is the least restrictive means by which the government can achieve a compelling governmental interest. 42 U.S.C. § 2000cc(a)(1)(A), (B); *Fuqua v. Ryan*, 890 F.3d 838, 848-49 (9th Cir. 2018) (citations omitted).

The district court determined that the Clear Conduct policy completely barred the Appellant from participating in drum practice group and the court, therefore, assumed that the policy imposed a substantial burden. Considering the evidence and testimony presented by the Appellees, the district court then correctly determined that the Clear Conduct policy was narrowly tailored to the compelling governmental interest of prison security. 1-ER-017-019.

### a.    Compelling governmental interest.

Prison security, or the "need to maintain order and safety," is a compelling governmental interest. *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005); *Shakur v. Schriro*, 514 F.3d 878, 889 (9th Cir. 2008); *Greene v. Solano Cty. Jail*, 513 F.3d 982, 988-89 (9th Cir. 2008). Although the need for institutional order and safety is a compelling interest, the government may not rely on a broadly formulated statement of interest alone. *Ramirez*, 595 U.S. at 427 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014)). Instead, the policy objectives must be identified with respect to "the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 574 U.S. at 363 (citing *Burwell*, 573 U.S. at 363).

**APPELLEES' ANSWERING BRIEF - 23**

There is no dispute that MSP's interest in the institutional safety of operations is a compelling governmental interest. 1-ER-018; 2-ER-046. Even if the parties disagreed on that point, however, the Appellees advance and the district court considered ample evidence demonstrating its compelling interest. Prison officials have an interest and a duty to take reasonable measures to ensure the safety of both prison staff and all inmates confined to that prison. *Washington v. Harper*, 494 U.S. 210, 225 (1990) (citing *Hudson v. Palmer*, 468 U.S 517, 526-27 (1984)). As discussed above, the Appellant has amassed a grimly impressive infraction record during his time at MSP. With nearly 200 infractions, many for violent and abusive behavior, the Appellant presents unique threats to the safety of prison staff and other inmates. Even if the Appellant's infraction record isn't enough to demonstrate the Appellee's interest, Terri Stefalo testified to threats made by the Appellant, 3-ER-324, and Billie Reich testified that the Appellant's assaultive and predatory behavior classifies him to be in the most restrictive housing available at MSP. 3-ER-334. Appellees have a clear compelling interest in the safety and operation of the prison and that interest is only heightened as it applies to the Appellant.

In addition to a general interest in prison safety, Appellees demonstrated a compelling interest in controlling attendance at communal activities such as drum practice group. 1-ER-018. Out-of-cell special communal events, particularly those

held in the RAC, carry heightened security risks. 3-ER-328. Terri Stefalo testified that "[i]nmates often use the RAC facilities to pass contraband and unauthorized communications among themselves." 3-ER-328. Supporting Stefalo's testimony, Appellee's provided extensive evidence demonstrating that inmates have access to potentially dangerous items while participating in activities in the RAC. *See* 3-ER-373 (documenting an incident in which prison staff, following sweat lodge, found the remnants of a broken bowl with about one-quarter of the pieces missing). Additionally, as the record indicates, the RAC is an area that is particularly susceptible to the transfer of illicit contraband. 3-ER-385-387. The Clear Conduct policy aims to ensure that inmates participating in out-of-cell communal events that carry a heightened security risk demonstrate their trustworthiness. The district court did not err when it determined that the Clear Conduct policy represents a compelling governmental interest. 1-ER-017-019.

### b. The district court correctly determined that the clear conduct policy satisfies the least restrictive means standard.

Where, as here, a prison demonstrates a compelling governmental interest, it must also show that the challenged policy is the least restrictive means to further that interest. *Saud v. Days*, 36 F.4th 949, 952-53 (9th Cir. 2022) (citing 42 U.S.C. § 2000cc-1(a)). A prison must "set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by the prisoner." *Johnson*, 23 F.4th at 1217 (quoting *Warsoldier*, 418 F.3d at 1000)).

**APPELLEES' ANSWERING BRIEF - 25**

Although the least restrictive means standard is "exceptionally demanding," *Holt*, 574 U.S. at 364, courts are "expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with considerations of cost and limited resources." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (citations and quotations omitted).

The Appellees have presented ample evidence demonstrating the need to trust inmates participating in out-of-cell communal activities. 1-ER-020-021, 3-ER-335. The Clear Conduct policy was adopted following incidents of assault, contraband trafficking, and gang activity. 3-ER-335-336. The policy is the least restrictive means by which prison staff can ensure that inmates who have recently engaged in dubious and disruptive behavior are not allowed further opportunity to harm prison staff and other inmates. 3-ER-335.

Although the Appellees did not assert that they considered a shorter period of time than six months, the district court correctly found that the Clear Conduct policy is nonetheless allowable under RLUIPA. MSP officials testified to the specific economic challenges posed by untrustworthy inmates. 3-ER-336-337. The manpower and resources needed to safely allow untrustworthy and violent inmates, like the Appellant, special access to communal events like drum practice group

would strain MSP staffing and resources. The district court took proper

"consideration of cost and limited resources" of MSP, and did not err in deferring

to the expertise and experience of the MSP staff who testified. *See Hartmann*, 707

F.3d at 1124.

## III.    Any harm to the Appellant's ability to request or attend a powwow is entirely speculative, raised for the first time on appeal, and should be rejected.

In the district court and on appeal, the Appellant argues that the clear

conduct policy substantially burdens his ability to attend powwows. The district

court correctly determined that because there was currently no powwow scheduled

that the Appellant could attend, the policy was not implicated.

As the district court noted, the Appellant specifically argued that the Clear

Conduct policy would prevent him from attending a powwow, should one ever

occur. 3-ER-479-482. As the Appellant stated below, however, there is no

powwow scheduled or even requested on the high side. *See* 3-ER-481 ("[j]ust

because a powwow hasn't been requested as a Special Event on the high side,

doesn't mean that it cannot be done."). The Appellant appears to recognize this fact

as now he argues that it is his ability to request a powwow that is substantially

burdened. Powwows are considered special events at MSP and are governed by

MSP Procedure 5.5.101. 2-ER-085, 2-ER-293-294. Just as with his ability to be

selected as the pipe carrier, however, the Clear Conduct policy does not apply to

the Appellant's ability to request a powwow. 3-ER-350-354 (inmates must have six month's clear conduct to work on or attend a special activity).

Furthermore, the Appellant now argues that the prison's policy restricting high side inmates from attending the low side for any reason burdens his ability to attend powwow. Dkt. 26.1 at 31. This Court should reject this argument because the Appellant failed to make it at the district court level. *Momox-Caselis v. Donohue*, 987 F.3d 835, 842 (9th Cir. 2021). In fact, the Appellant explicitly stated that he was not challenging the high side/low side policies in this case. 3-ER-481. ("[Appellees] base their argument on the attendance of the low side inmate by a high side inmate, **which is not even at issue.**") (Emphasis added). 1-ER-012.

The district court correctly determined that, because the Appellant's argument regarding his ability to attend a powwow was entirely speculative, he failed to show that his ability to attend a powwow was substantially burdened. This Court should disregard the Appellant's arguments he now raises for the first time on appeal, and affirm the district court.

## CONCLUSION

There are no genuine issues of material fact in this case. The district court correctly determined that the Clear Conduct policy does not interfere with Appellant's ability to be pipe carrier and participate in sweat setup crew. Further, even where the Clear Conduct policy does burden the Appellant's religious

**APPELLEES' ANSWERING BRIEF - 28**

exercise, the district court correctly found that it was narrowly tailored to the compelling state interest of prison safety. Finally, this Court should not entertain the Appellant's arguments regarding powwow attendance as it is raised for the first time on appeal and entirely speculative.

RESPECTFULLY SUBMITTED this 16th day of January 2025.

MONTANA DEPARTMENT OF JUSTICE
AGENCY LEGAL SERVICES BUREAU

*/s/ Blake R. Koemans*
BLAKE R. KOEMANS
Agency Legal Counsel

*Attorney for Defendants-Appellees*

**CERTIFICATE OF COMPLIANCE FOR BRIEFS**

9TH CIRCUIT CASE NO. 23-35494

I am the attorney in this case. This brief contains 4,204 words, excluding the items exempted by Fed. R. App. P. 32(f).  The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1(a).

/s/ *Blake R. Koemans*
BLAKE R. KOEMANS
Agency Legal Counsel

*Counsel for Defendant-Appellees*