No. 24-3340, 24-3177

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

MAKUEEYAPEE D. WHITFORD,

*Plaintiff-Appellant*,

v.

JIM SALMONSEN, et al.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Montana
No. 22-70-H-BMM-JTJ
Hon. Brian Morris

_____

**PLAINTIFF-APPELLANT'S THIRD BRIEF (REPLY)**

_____

Amaris Montes
Lillian Novak
Rights Behind Bars
1800 M St. NW Fnt. 1 #33821
Washington, DC 20033
202-455-4399
amaris@rightsbehindbars.org
*Attorneys for Plaintiff-Appellant*
*Makueeyapee Whitford*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ............................................................................1

ARGUMENT ....................................................................................2

    I.    Whitford's Religious Rights Are Substantially Burdened, and Defendants' Arguments Conflate RLUIPA's Requirements Under the Substantial Burden and Compelling Interest Tests. ........................2

        A.    Sweat Lodge Setup ......................................................4

        B.    Pipe Carrier ...............................................................11

    II.    Defendants Have Only Provided Generalized Compelling Interests for Denying Whitford's Religious Practice Which Fails to Meet RLUIPA's Requirements...................................................................................14

    III.    Defendants Have, Once Again, Provided No Evidence that the Clear Conduct Policy is the Least Restrictive Means Available to Serve Their Purported Compelling Interests....................................................20

    IV.    Montana State Prison Makes It Impossible for Whitford to Attend Powwow, and this Burden on Religious Exercise is Far from Speculative ...26

CONCLUSION................................................................................30

CERTIFICATE OF COMPLIANCE ................................................31

CERTIFICATE OF SERVICE ........................................................32

i

# TABLE OF AUTHORITIES

## Cases

*Ali v. Stephens*, 822 F.3d 776 (5th Cir. 2016) ...........................................18

*Brinkman v. Linderman*, 616 F. App'x 227 (9th Cir. 2015) ....................................13

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)...18

*Clem v. Lomeli*, 566 F.3d 1177 (9th Cir. 2009) .........................................................3

*Cutter v. Wilkinson,* 544 U.S. 709 (2005) .................................................................28

*Greene v. Solano Cnty. Jail*, 513 F.3d 982 (9th Cir. 2008) ............................. passim

*Greenhill v. Clarke,*  944 F.3d 243 (4th Cir. 2019) .............................................7, 20

*Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014)...................................................23

*Holt v. Hobbs*, 574 U.S. 352 (2015)................................................................. passim

*Johnson v. Baker*, 23 F.4th 1209 (9th Cir. 2022) ............................................ passim

*Johnson v. California,* 543 U.S. 499 (2005) .............................................................13

*Jones v. Salt Lake Cty.*, 503 F.3d 1147 (10th Cir. 2007) .........................................14

*Jones v. Slade*, 23 F.4th 1124 (9th Cir. 2022) ............................................................9

*Lovelace v. Lee,* 472 F.3d 174 (4th Cir. 2006) .....................................................5, 28

*Moussazadeh v. Texas Dep't of Crim. Just,*  703 F.3d 781 (5th Cir. 2012)...............8

*Ramirez v. Collier*, 595 U.S. 411 (2022).......................................................... 13, 15

*Rogers v. Giurbino*, 625 F. App'x 779 (9th Cir. 2015) ............................................11

*Salahuddin v. Goord,* 467 F.3d 263 (2d Cir. 2006)...................................................7

*Scott v. Harris*, 550 U.S. 372 (2007)..................................................................4, 12

*Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008) ........................................ 16, 23, 25

*Spratt v. R.I. Dep't of Corrs.*, 482 F.3d 33 (1st Cir. 2007) .....................................28

*Walker v. Beard*, 789 F.3d 1125 (9th Cir. 2015)......................................................10

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) ................................... passim

*Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014)...................................... 16, 18

## Statutes

42 U.S.C. § 2000cc ....................................................................................... 2, 13, 14

## INTRODUCTION

Makueeyapee Whitford is an enrolled member of the Blackfeet Nation who has followed and studied Native religious practices throughout his entire life. Montana State Prison ("MSP") has substantially burdened Whitford's religious practices in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by requiring six months of clear conduct to attend powwow, sweat lodge setup, drum practice, and eligibility to serve as a pipe carrier, resulting in a ban on these religious practices. In their Answering Brief, Defendants fail to meaningfully address any of the issues raised by Whitford in his Opening Brief. Instead, Defendants parade Whitford's disciplinary history as smoke and mirrors to distract from the fact that they offer no controlling precedent or factual basis to support their assertions.

Defendants' arguments rely on fundamental misunderstandings of RLUIPA's requirements and fall short of the high burden it places on Defendants. Defendants rely on Whitford's disciplinary history to argue that his religious practice is not substantially burdened, but their argument ignores ample precedent that has held that disciplinary issues have no bearing on RLUIPA's substantial burden analysis. Furthermore, Defendants offer only generalized compelling interests, fail to explain why these security rationales compel banning these religious practices but not other group activities, and fail to account for other facilities that provide these religious

1

rights without issue. Finally, Defendants themselves concede that they did not actually consider any less restrictive means to meet their purported compelling interest, despite the ample alternatives provided by Whitford, which alone merits reversal. Because there is at least a genuine dispute of fact as to whether Whitford's religious practice is substantially burdened, and the government presents no valid compelling interest, or evidence that their restriction is the least restrictive means of effectuating that interest, the holding of the district court should be reversed and remanded.

## ARGUMENT

### I. Whitford's Religious Rights Are Substantially Burdened, and Defendants' Arguments Conflate RLUIPA's Requirements Under the Substantial Burden and Compelling Interest Tests.

RLUIPA protects prisoners' religious exercise "to the maximum extent permitted . . . by the Constitution." 42 U.S.C. § 2000cc-3(g). To that end, the statute prohibits a prison from substantially burdening such exercise unless it can satisfy strict scrutiny. *See* 42 U.S.C. § 2000cc-1(a).

Under RLUIPA, a plaintiff must first show that the challenged policy substantially burdens his religious exercise. *Johnson v. Baker*, 23 F.4th 1209, 1214 (9th Cir. 2022). "[A]n outright ban on a particular religious exercise is a substantial burden on that religious exercise." *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988

2

(9th Cir. 2008). It makes no difference under RLUIPA whether the plaintiff can exercise his faith in other ways. *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015). Actions short of an outright ban may also violate RLUIPA: for example, this Court has "recognized that government action that threatens punishment [] to coerce a religious adherent to forgo her or his religious beliefs, or causes substantial delay, uncertainty, and expense to worship," may amount to a substantial burden. *Johnson*, 23 F.4th at 1215–16 (quotations omitted).

Defendants make substantial burden arguments concerning only two of the four religious practices at issue in this appeal, and their arguments on these two practices contravene this Court's precedent. Defendants substantially burdened Whitford's religious practice by disallowing his participation in all four religious practices at issue in this appeal: drum circle, powwows, sweat lodge setup, and pipe carrier duties. Op. Br. 23–40. As to the first two practices—drum circle and powwow—Defendants waive any arguments that Whitford's practice was substantially burdened by not addressing it in their Answering Brief. *See* Ans. Br. 17–22 (arguing lack of substantial burden only as to sweat lodge setup and pipe carrier practices).[1] As to participation in sweat lodge setup crew, Defendants

---

[1] The district court correctly held that Whitford's religious practice in drumming was substantially burdened, 1-ER-17, and Defendants offer no argument that the court was incorrect, waiving the issue. Ans. Br. 17–22. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009). Regarding powwow, Defendants offer no arguments to rebut

erroneously focus on Whitford's prior disciplinary violations, but, as this Court has held, these disciplinary or security classifications do not strip Whitford of his right to practice his faith unburdened. *Greene*, 513 F.3d at 988–90. Finally, regarding serving as a pipe carrier, Defendants argue that because the text of the Clear Conduct Policy does not explicitly mention pipe carrier elections, it does not burden Whitford's ability to participate in these elections. Ans. Br. 20–22. But this argument ignores record evidence that the policy is enforced in a manner that has this effect, which is sufficient under this Court's precedent, and must be credited in Whitford's favor as the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## A. Sweat Lodge Setup

There is no dispute that Whitford's religious tenets require sweat lodge setup as an integral part of the ceremony of sweat lodge. 2-ER-80; Ans. Br. 15. Because of the Clear Conduct Policy, Whitford has been banned from engaging in his religious practice of sweat lodge setup for nearly ten years. Op. Br. 11. The district court erred in holding that Whitford was not burdened in his religious exercise

---

that the Clear Conduct Policy effectively bars Whitford's ability to attend powwow. Though they raise issues concerning whether a powwow is scheduled, they never directly address Whitford's argument that the Clear Conduct Policy burdens his ability to hold a powwow or attend if it is scheduled. Ans. Br. 27–28; *see also infra* Section IV.

because exclusion from sweat lodge setup was only an "inconvenience," because he could attend other religious ceremonies. 1-ER-15–16. The Court treated sweat lodge setup as an extra privilege instead of an integral part of his religious practice, which contravenes RLUIPA. *See* Op. Br. 34–40; *Holt*, 574 U.S. at 361–62 (rejecting the argument that the plaintiff could practice his religion through other religious practices instead of growing his beard because courts must look at the regulation's effect on the specific religious practice at issue).

In their Answering Brief, Defendants do not defend this error. Instead, they argue that the Clear Conduct policy is not a substantial burden on Whitford's religious exercise because "the Clear Conduct policy merely requires the Appellant to not engage in violent, obstructive, and untrustworthy behavior," and thus "[n]othing about the Clear Conduct policy requires the Appellant to choose to violate his religious beliefs." Ans. Br. 20. This argument belies a fundamental misunderstanding of the rights RLUIPA protects.

Defendants' logic confuses a plaintiff's requirement to show a substantial burden with a prison's burden to show a compelling interest and least restrictive means. Whitford's disciplinary issues are not pertinent to a substantial burden analysis under RLUIPA. *See Lovelace v. Lee,* 472 F.3d 174, 188 (4th Cir. 2006) ("it makes no difference to this analysis that the burden on [the plaintiff's] religious exercise resulted from discipline (punishment for his alleged infraction), rather than

from the prison's failure to accommodate his religious needs in the first instance."). That is, a history of discipline within the prison does not strip a prisoner of their right under RLUIPA to be free from unjustified burdens on their religious practice. Defendants may raise substantial evidence of a security justification as their compelling interest or to show that the government's action is the least restrictive means, but invoking his disciplinary history as the reason why Whitford's practice is not burdened confuses the proper steps under RLUIPA.

Defendants' logic also contravenes mandatory precedent which clearly establishes that prison officials may not limit religious rights because a prisoner has committed disciplinary infractions or is held under a heightened security classification. Defendants cite absolutely no legal authority nor case in any court— let alone this one—that shows that a court may deny religious practices because an individual has committed disciplinary infractions. Ans. Br. 17–22. Indeed, that is because courts across the country, including this one, have held otherwise. Op. Br. 25–27.

In *Greene v. Solano County Jail*, for example, the plaintiff was held in maximum security and requested to attend Christian group services but was denied because of particular security concerns related to maximum security prisoners. 513 at 985. The Court had "little difficulty" concluding that the plaintiff's religion was

burdened because he could not attend group services, even though the ban only applied to the plaintiff because of his high risk of danger to others. *Id.* at 988.

In *Greenhill v. Clarke*, the plaintiff was in segregation because of "a pattern of excessive violent disciplinary charges." 944 F.3d 243, 246 (4th Cir. 2019). The Fourth Circuit held that the plaintiff was substantially burdened by the denial of access to group Jum'ah with Muslims over live broadcast, even when prison officials asserted security justifications to withhold televised services to those with disciplinary issues. *Id.* at 250–51. The Fourth Circuit *did not* hold—as Defendants' argument supports—that the plaintiff's conduct forfeited his ability to access religious services. On the contrary, the court held, "[a]ccess to bona fide religious exercise is not a privilege to be dangled as an incentive to improve inmate conduct, and placing such religious exercise in the category of *privilege* to be earned is fundamentally inconsistent with the *right* to religious exercise that RLUIPA guarantees to prisoners." *Id.* at 250 (emphasis in original).

In *Salahuddin v. Goord*, the Second Circuit held it was a substantial burden to deny the plaintiff Islamic holy meals in segregation—the Second Circuit did so even though the plaintiff was in segregation for threatening violence against another prisoner. 467 F.3d 263, 275–76 (2d Cir. 2006). Similarly, in *Moussazadeh v. Texas Dep't of Crim. Just.*, the Fifth Circuit held that a prisoner was substantially burdened by paying for kosher meals when he was transferred to another security unit because

7

of "serious" disciplinary infractions, where the new unit required Jewish prisoners to pay for kosher meals. 703 F.3d 781, 787 (5th Cir. 2012). The Fifth Circuit *did not* hold that the plaintiff lost the privilege to a free religious meal when he committed disciplinary infractions—instead, it confirmed that the plaintiff was burdened by this denial of access to a free kosher meal in the higher security facility. *Id.* at 793–96. Just like this precedent, MSP may not substantially burden Whitford's religious practice simply because of his disciplinary infractions or level of security.

Defendants only cite one case, *Warsoldier*, to argue that Whitford is not substantially burdened, but this case only helps demonstrate the burden on Whitford's religious rights. Ans. Br. 18–20. In *Warsoldier*, the religious tenets of the Native American plaintiff prevented him from cutting his hair unless a loved one died. 418 F.3d 989, 991–92 (9th Cir. 2005). This Court held that the prison caused a substantial burden to the plaintiff's religious practice because he faced disciplinary issues by following his religious practice when he refused to cut his hair. *Id.* at 996. Defendants argue that "[u]nlike in *Warsoldier*, compliance with the Clear Conduct policy would not require the Appellant to 'modify his behavior and violate his belief.'" Ans. Brief 19. Defendants' reasoning is flawed for several reasons.

First, Defendants inappropriately narrow the many ways that this Court has established that religious exercise may be burdened. *See Johnson*, 23 F.4th at 1215 ("Our precedent shows that we do not take a narrow view of what constitutes a

'substantial burden.'"). While it is clear that an outright prohibition on religious practice is a substantial burden on religious exercise, *Warsoldier* made clear that even when the "compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." *Warsoldier*, 418 F.3d at 995. This Court has also explained, "[m]ore subtly, a regulation may impact religious exercise indirectly, by encouraging an inmate to do that which he is religiously prohibited or discouraged from doing, or by discouraging an inmate from doing that which he is religiously compelled or encouraged to do." *Jones v. Slade*, 23 F.4th 1124, 1140 (9th Cir. 2022) (citations omitted). Furthermore, this Circuit clarified that religious exercise can be burdened through "substantial delay, uncertainty, and expense to worship." *Johnson*, 23 F.4th at 1215–16 (quotations omitted).

Second, like in *Warsoldier*, Whitford's religious practice is prohibited by the prison's policy. If Whitford chooses to engage in his religious practice of sweat lodge setup despite the Clear Conduct Policy, he would violate institutional rules and would be subject to disciplinary consequences, just like in *Warsoldier*. 3-ER-321; 3-ER-342. To make matters worse, such a violation would start the clock again for the Clear Conduct Policy, lengthening MSP's ban on his religious practice in an inescapable cycle. Whitford's compliance with the Clear Conduct Policy does not minimize the burden to his religious practice—RLUIPA does not require plaintiffs to affirmatively obtain disciplinary infractions for participating in their religious

practice. *See Walker v. Beard*, 789 F.3d 1125, 1135 (9th Cir. 2015) ("a *threat* of 'serious disciplinary action' constituted pressure to conform" and thus substantial burden) (citing to *Holt*, 574 U.S. at 361) (emphasis added).

In arguing that Whitford's case is not analogous to the plaintiff in *Warsoldier,* Defendants attempt to characterize the burden on Whitford's religious practice as something that is avoidable in the future, ignoring the *current* burden on his religious exercise. Defendants claim that "compliance with the Clear Conduct policy would not require Appellant to 'modify his behavior and violate his belief,'" but instead "merely requires Appellant to not engage in violent obstructive, untrustworthy behavior." Ans. Br. 19, 20. But this case is not about potential future burdens on religious practice; it is about the burden Whitford is presently experiencing. Accurately analyzing Whitford's claim from the current point in time, the Clear Conduct Policy has already been triggered. Refraining from further violations of the prisons' disciplinary code will do nothing at all to restore Whitford's unburdened access to group religious practice, including sweat-lodge setup, for the six months following his latest infraction. This minimum six-month delay is an undue burden under the Court's precedent. *See* Op. Br. 27–29.

However, Defendants fail to address Plaintiff's arguments that even if the Court were to consider the Clear Conduct Policy as a delay, Whitford is still substantially burdened. The District Court erred in holding that Whitford was not

substantially burdened because "Whitford's choices result in a delay in participating in certain aspects of his religion" and a "short term intrusion does not amount to a substantial burden." *See* 1-ER-16. As explained in Appellant's Opening Brief, even if the Clear Conduct Policy is considered a delay, as opposed to an outright ban, the delay has been a significant burden on Whitford's religious rights, in effect barring him from these activities for over ten years. *See* Op. Br. 27–29. Whitford prevails even if interpreted as a series of six-month bans since this Court has held that even a denial of religious practices for less than six months is a substantial burden. *See e.g. Rogers v. Giurbino*, 625 F. App'x 779, 783 (9th Cir. 2015) (affirming that a denial of Sunday services and group bible study for 10 days was a substantial burden).

## B. Pipe Carrier

Whitfords' religious practice includes his long tradition of serving as a pipe carrier for religious ceremonies. 3-ER-515. MSP prevents Whitford from serving as a pipe carrier by requiring six months' clear conduct to be eligible to be elected as a pipe carrier. 2-ER-82. The district court erred when it inappropriately granted summary judgment on this issue by holding that there was no dispute that the pipe carrier role was exempt from the Clear Conduct Policy, even though all the parties produced evidence that the policy applied. 1-ER-11–12; Op. Br. 29–30. This was

error because all inferences must be made in favor of the nonmoving party. *Scott*, 550 U.S. at 378.

Defendants rely on the same improper reasoning as the district court. Defendants argue that "Appellant himself appears to acknowledge that the Clear Conduct Policy does not explicitly apply to his ability to be pipe carrier." Ans. Br. 21. This is inaccurate. Whitford has always argued that the Clear Conduct policy prevents him from being eligible to be a pipe carrier. Op. Br. 30. Defendants cite to excerpts in Whitford's Declaration in Support of Motion for Summary Judgment where he describes the Clear Conduct Policy as an "unwritten rule and custom" to show Whitford somehow acknowledges the Clear Conduct Policy does not apply to being a pipe carrier. Ans. Br. 21. Yet these excerpts only support that Whitford has consistently argued that the policy, whether written or unwritten, actively prevents him from being eligible for election as a pipe carrier. Defendants also ignore the many record citations in Appellant's Opening Brief pointing to instances where Defendants themselves acknowledge the Clear Conduct policy applies to this religious practice. *See e.g.* 3-ER-419–420 (stating in their Statement of Disputed Facts for Summary Judgment that it is "[u]ndisputed to the extent that an inmate is required to have six months' clear conduct to stand for election as a pipe carrier."); *see also* Op. Br. 30.

12

Whether the policy is written or unwritten, the effect is still the same—MSP has prevented Whitford from being eligible as a pipe carrier throughout his time of incarceration. Defendants argue that "Appellant's reference to custom and policy is simply insufficient to carry his burden of showing that a government policy substantially burdens his religious exercise." Ans. Br. 21. This contradicts the plain meaning of RLUIPA which expects challenges based on government practices, not just written policies. *See* 42 U.S.C.A. § 2000cc-2 ("[T]he plaintiff shall bear the burden of persuasion on whether the law (including a regulation) *or government practice* that is challenged by the claim substantially burdens the plaintiff's exercise of religion") (emphasis added). The Supreme Court and the Ninth Circuit have addressed prisoners' challenges to unwritten policies that violate RLUIPA. *See Ramirez v. Collier*, 595 U.S. 411 (2022) (addressing a prisoner's RLUIPA challenge to a denial of laying hands during his execution, even though "Texas pointed to no provision of its execution protocol requiring this result"); *Brinkman v. Linderman*, 616 F. App'x 227, 228–29 (9th Cir. 2015) (addressing a prisoner's challenge to an unwritten policy under RLUIPA).[2] Thus, Whitford appropriately argues that MSP's

---

[2] Similarly, in the constitutional context which offers markedly less protection than the strict scrutiny requirements under RLUIPA, courts have been clear that a policy does not need to be written to burden an individual's constitutional rights. *See e.g., Johnson v. California,* 543 U.S. 499, 508–509, (2005) (holding that the California Department of Correction's unwritten policy of racially segregating prisoners in double cells was immediately suspect and subject to strict scrutiny); *Jones v. Salt*

practice prohibits him from acting as a pipe carrier, which substantially burdens his religious exercise.

Finally, Defendants argue that this Court should still hold that the Clear Conduct policy does not create a substantial burden because it does not "forbid[] conduct that [Appellant] believes he is religiously compelled to do" or "discourage [Appellant] from doing that which he is religiously compelled or encouraged to do." *See* Ans. Br. 21–22. Defendants advance the same erroneous arguments as their sweat lodge setup analysis, arguments that are not supported by any authority. *See supra*, Section I.A. The Clear Conduct policy acts to forbid, or at the very least, significantly delay, Whitford from being eligible to become a pipe carrier, creating a genuine dispute of a substantial burden. *See* Op. Br. 22-30.

## II. Defendants Have Only Provided Generalized Compelling Interests for Denying Whitford's Religious Practice Which Fails to Meet RLUIPA's Requirements.

Defendants have the burden of showing a compelling interest in prohibiting Whitford's religious practices. 42 U.S.C. § 2000cc-1(a). When analyzing a compelling interest, "RLUIPA requires [courts] to scrutinize the asserted harm of granting specific exemptions to particular religious claimants and to look to the

---

*Lake Cty.*, 503 F.3d 1147, 1158 n.13 (10th Cir. 2007) ("The fact that a jail policy is unwritten "is irrelevant" to an analysis of its constitutionality.")

marginal interest in enforcing the challenged government action in that particular context." *Holt*, 574 U.S. at 363 (citations omitted). This specific evidence must be "focused," based on detailed evidence tailored to the situation, and not generalized or speculative. *Id.*

Defendants purported compelling interests fail to meet RLUIPA's standard in three distinct ways. First, Defendants again rely on generalized compelling interests to justify their denial of Whitford's religious rights instead of addressing each specific religious practice, which does not meet RLUIPA's exacting standard. Ans. Br. 23–25. Second, even the justifications that Defendants do provide are underinclusive, and they fail to address these discrepancies. *Id.* Third, Defendants rely on Whitford's personal disciplinary history, Ans. Br. 24, but this alone cannot support curtailing his religious rights without any explanation regarding the risk to the specific religious practice, especially when withholding religious rights is improperly used as a means to improve behavior.

First, though there is no question that prison security may be a compelling interest, Defendants simply offer "broadly formulated interests" without more, which fails to show a compelling interest. *Ramirez*, 595 U.S. at 427. Courts require detailed evidence of a compelling interest, including specifics about the prison's security needs, staffing, and costs. *See Holt*, 574 U.S. at 363–64 (recognizing that

though of course the general interest in controlling contraband is a compelling interest, it was necessary to scrutinize the evidence of the compelling interest specific to growing a half-inch beard, ultimately finding it "preposterous")*; Warsoldier,* 418 F.3d at 1000–01 (closely analyzing security statistics provided by defendants and holding that a difference of a rate of assaults of 4.7 percent for men versus 3.2 percent for women was not enough to show compelling reason to deny allowing long hair for incarcerated women but not men); *Shakur v. Schriro*, 514 F.3d 878, 889–90 (9th Cir. 2008) (finding that a declaration specifying the cost of 1.5 million dollars to provide a religious diet was insufficient evidence to support a compelling interest); *see also Yellowbear v. Lampert*, 741 F.3d 48, 58–59 (10th Cir. 2014) (holding that the prison's security and cost concerns with putting the facility on lockdown to provide the plaintiff with sweat lodge was insufficient because Defendants failed to quantify costs or explain why lockdowns were permissible in other situations). Defendants' evidence here is far too general, conclusory, and insufficient to meet their burden.

Defendants argue that communal practices pose a heightened risk because "[i]nmates often use the RAC facilities to pass contraband and unauthorized communications among themselves." Ans. Br. 25. Defendants state that these concerns relate to RAC activities in general, but do not address their interest in

16

applying the Clear Conduct Policy to each Native religious practice in particular. *Id.* Defendants Reich and Stefalo's declarations discuss only why the prison bans people housed on the high side from attending powwows on the low side, but do not address any other religious practices or Whitford's ability to have powwow on the high side. 3-ER-318–37.

Defendants also claim to provide "extensive" evidence demonstrating that incarcerated people have "access to potentially dangerous items while participating in activities in the RAC." Ans. Br. 30. But this evidence is not extensive—nor sufficient—to meet the standard required to show compelling interest. To support their security concerns, Defendants cite only one incident, in which a broken bowl was left in the RAC after a ceremony. *Id.* One broken bowl over nearly a decade is insufficient to support a compelling interest, which requires detailed evidence tailored to the specific practice at issue. *Warsoldier*, 418 F.3d at 1000–01.

Second, Defendants' compelling interest in the Clear Conduct Policy is underinclusive. Whether a policy is "substantially underinclusive" may "implicate the RLUIPA analysis." *Holt*, 574 U.S. at 365. Underinclusive treatment is problematic because "a law cannot be regarded as protecting a[ ] [compelling] interest ... when it leaves appreciable damage to that supposedly vital interest unprohibited." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S.

17

520, 547 (1993) (quotations omitted)). "A law's underinclusiveness—its failure to cover significant tracts of conduct implicating the law's animating and putatively compelling interest—can raise with it the inference that the government's claimed interest isn't actually so compelling after all." *Yellowbear*, 741 F.3d at 60. If a policy is underinclusive, the prison must provide "an adequate explanation for its differential treatment" to show it "hasn't acted in a logically inconsistent way." *Ali v. Stephens*, 822 F.3d 776, 787 (5th Cir. 2016).

MSP's clear conduct policy is underinclusive in multiple respects, none of which Defendants address. For example, Defendants do not offer an explanation as to why the Clear Conduct Policy generally permits attendance at sweat lodge and pipe ceremony, which are held in the same location with the same people, without requiring Native practitioners to adhere to the Clear Conduct Policy. 2-ER-152–53. Furthermore, visitation is not subject to the Clear Conduct Policy. 2-ER-154; 2-ER-234–259. Presumably visitation has many of the same generalized concerns regarding contraband and unauthorized communications—likely more so. Yet Defendants provide no explanation as to why visitation does not implicate the same compelling interest, nor do they otherwise explain why religious practice should logically be treated differently. Ans. Br. at 23–25. Furthermore, applying the Clear Conduct Policy to any of the religious activities that Whitford raises contradicts

MSP's own disciplinary policy which states that an activity can be restricted only when the violation involves that same activity. 3-ER-492. Defendants offer no compelling reason for this contradiction. Accordingly, their asserted compelling interest is insufficient. *Johnson*, 23 F.4th at 1217 (a prison's underinclusive policy is "a sure sign that it is not using the least restrictive means of furthering its security interest.")

Finally, Defendants rely on Whitford's disciplinary history as proof of compelling interest to deny him required religious exercise, Ans. Br. 24, but again their argument rests on two critical errors. First, Defendants fail to tie this purported security interest to any evidence that Whitford's disciplinary history creates a risk within the specific religious practices to which he seeks access. Ans. Br. at 24–25. For example, what is the compelling interest in denying Whitford's ability to engage in drum practice, even considering his particular disciplinary history, when there are significant security measures in place already for people attending drum practice? 3-ER-345. Why is Whitford's disciplinary history important for pipe carrying but not engaging in pipe ceremony (a permitted practice), also considering the security measures already in place for both? Broadly invoking Whitford's disciplinary history does not tailor Defendants' compelling interest in security to each religious practice. This is insufficient under RLUIPA. *See Holt*, 574 U.S. at 363.

19

Second, Defendants' invocation of Whitford's disciplinary history leads to the inference that they are treating religious practices as an incentive to improve behavior, which is prohibited by RLUIPA. Ans. Br. 23–25. RLUIPA does not allow such broad bans on religious practice as an incentive to improve behavior, even when substantiated by purported security concerns stemming from individual conduct. *See Greenhill,* 944 F.3d at 251–52; Op. Br. at 47–48.

### III. Defendants Have, Once Again, Provided No Evidence that the Clear Conduct Policy is the Least Restrictive Means Available to Serve Their Purported Compelling Interests.

RLUIPA's least restrictive means test is "exceptionally demanding." *Holt,* 574 U.S. at 353. The prison must "set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by the prisoner." *Warsoldier*, 418 F.3d at 1000 (internal quotation omitted). Defendants' cursory one-and-a-half-page discussion regarding the least restrictive means test provides only conclusory arguments that fall short of this high burden. Ans. Br. 25–27.

Defendants concede in their Answering Brief that they did not consider alternatives, which is sufficient reason to reverse and remand. *See* Ans. Br. 26 ("Although the Appellees did not assert that they considered a shorter period of time than six months, the district court correctly found that the Clear Conduct policy is nonetheless allowable under RLUIPA."). The Supreme Court has instructed, "[i]f a

20

less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt*, 574 U.S. at 364–65 (quotation omitted).

Even though Whitford identified concrete alternatives, Op. Br. 51–52, Defendants do not engage with them. Defendants argue that the "policy is the least restrictive means by which prison staff can ensure that inmates who have recently engaged in dubious and disruptive behavior are not allowed further opportunity to harm prison staff and inmates." Ans. Br. 26. Defendants offer generalized reasons to apply the Clear Conduct policy to communal events, but this offers no explanation why it is the least restrictive means to deny these religious practices. *Greene*, 513 F.3d at 988–89 ("[N]o longer can prison officials justify restrictions on religious exercise by simply citing to the need to maintain order and security in a prison. RLUIPA requires more.").

Defendants further argue that "Appellees have presented ample evidence demonstrating the need to trust inmates participating in out-of-cell communal activities," Ans. Br. 26, yet this "ample evidence" is sparse at best. They only cite to two pages of Defendants Reich's declaration that is strictly limited to MSP's purported compelling reasons for denying Whitford the ability to attend powwow on the low side, and their requirement for clear conduct for special events in general.

21

Op. Br. 26; 3-ER-335–336.[3] This affidavit says nothing at all about any lesser restrictive means considered and why they are deficient.

Additionally, Defendants urge this Court to apply "deference to the experience and expertise of prison and jail administrators." Ans. Br. 26. But this Court has qualified such deference, clarifying that while "prison administrators are to be accorded deference with regard to prison security, [they] still must show that [they] actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Greene*, 513 F.3d at 989 (quoting *Warsoldier,* 418 F.3d at 999) (internal quotation marks omitted). Because Defendants have failed to show they considered any alternatives whatsoever, and because factual disputes exist as to what alternatives may have been viable, Defendants may not be afforded deference at the summary judgment stage.

Even considering the scant arguments that Defendants did present regarding potential costs to the institution, the evidence fails to meet the requirements under RLUIPA. This Court requires substantial evidence to prove that costs are a compelling interest and that prohibitions on religious exercise are the least restrictive means to achieve that interest. For example, in *Shakur v. Shriro*, the prison

---

[3] Defendants do not address Whitford's argument regarding the insufficiency of Defendant Reich's declaration as a DOC grievance coordinator, and there is no explanation why he would have the necessary expertise to provide information regarding the facility's compelling interest or least restrictive means. *See* Op. Br. 50.

administration offered affidavits showing that it would cost 1.5 million dollars to offer halal and kosher meals to prisoners, and the Court held this was insufficient evidence to deny their religious rights, especially when other state prison systems, including WDOC, provided those meals. 514 F.3d at 889–90.

In their Answering Brief, Defendants argue that the Clear Conduct Policy is the least restrictive means because of the "specific economic challenges posed by untrustworthy inmates" and the "manpower and resources needed to safely allow untrustworthy and violent inmates, like the Appellant, special access to communal events like drum practice group would strain MSP staffing and resources." Ans. 26–27. To support this broad statement, Defendants cite only the same declaration by Defendant Reich regarding their ability to allow Whitford to attend powwow on the low side, which does not mention the drum practice group at all (or any other religious practice for that matter). *Id*.; 3-ER-335–37. Because Defendants never raised any argument at all about these other religious practices, Defendants' counsel may not formulate new arguments not raised by Defendants at summary judgment to meet their burden on this prong. *Haight v. Thompson*, 763 F.3d 554, 564 (6th Cir. 2014) ("[I]n the absence of evidence demonstrating (as opposed to lawyer arguments speculating) that the prison considered and rejected alternatives more tailored to its security interest, the prison's prohibition cannot withstand this aspect of strict scrutiny.").

This deficiency is critical because there are many necessary factual determinations to establish that the Clear Conduct Policy is the least restrictive means to meet their cost concerns. Defendants have not even gone so far as to quantify the costs associated with providing Whitford with the religious practices he requests. Ans. Br. 26–27. Important questions remain such as: What are the specific costs and resources needed to allow Whitford to attend powwow on the high side? Is it the same as simply allowing him to help with sweat lodge setup? What are the costs needed to allow him to attend drum practice? What about pipe carrier eligibility? Defendants have the burden to show specific evidence for each of these questions, but they fall short. Without any proposed costs, the district court could not—and did not—conduct a fact specific inquiry into the costs of providing Whitford with his religious practices to determine if the Clear Conduct Policy is necessary. 1-ER-20–22. Thus, there is at least a genuine dispute of fact that the Clear Conduct Policy is not the least restrictive means.

In addition to failing to consider specific alternative policies, the district court erred by ignoring Whitford's evidence the Washington Department of Corrections (WDOC) allows powwow, sweat setup, pipe carrying, drumming, and personal pipes without any consideration on disciplinary history. 2-ER-148–50; Op. Br. 51. At summary judgment and again on appeal, Whitford identified that WDOC allowed his religious practice—despite sharing similar compelling interests— and raised

24

several alternatives to provide him with access to the practices mandated by his religion. *See* Op. Br. 51. Whitford himself has direct experience with this system, testifying that he served there for 10 years and was able to access these religious practices throughout his time there, no matter his disciplinary history. *Id.* He also provided other alternatives for Defendants to consider, including that he could attend powwow on the high side instead of the low side, or that the Clear Conduct Policy could be tailored to apply to disciplinary violations committed at religious events, which would accord with MSP's other disciplinary policies. 3-ER-503; 3-ER-494; 2-ER-226.

The district court itself considered this Court's precedent that, to show least restrictive means, defendants must account for the policies of other institutions that address the same compelling interest through different, less burdensome, methods. 1-ER-21. To deny Defendants' motion for summary judgment on carrying personal pipes, the district court relied on this Circuit's longstanding precedent that "the failure of a defendant to explain why another institution with the same compelling interest was able to accommodate the same religious practice may constitute a failure to establish that the defendant was using the least restrictive means." *Shakur*, 514 F.3d at 890–91 (citation omitted). The district court provided no explanation as to why it recognized the alternative policies in place at WDOC for carrying a personal pipe but not for Whitford's other religious practices, 1-ER-21, and Defendants do no

offer one. As Whitford similarly presented evidence of WDOC's ability to provide sweat lodge setup, pipe carrying, and powwow, Defendants do not provide any authority or explain why it was appropriate for the district court to deny these potential alternatives for pipe carrying but not for the rest of his religious right. And, because Defendants have dropped their appeal on personal pipe issue, they forfeit any arguments regarding this distinction. *See* Ans. Br. 3. n.1.

### IV. Montana State Prison Makes It Impossible for Whitford to Attend Powwow, and this Burden on Religious Exercise is Far from Speculative.

Powwow observance is a deeply significant religious practice for Whitford. 3-ER-516. Powwows should occur on an annual basis. *Id.* MSP policies bar any high side prisoner from entering the low side, prohibiting Whitford's ability to attend any potential powwow on the low side. 3-ER-335. The Clear Conduct Policy also prevents Whitford from attending any powwow on high side as a Special Activity. *Id.* The district court erred in granting summary judgment in Whitford's RLUIPA claim when it held "there is no religious practice to burden," because the Clear Conduct Policy has barred Whitford's ability to attend powwow for the last ten years. 1-ER-13; Op. Br. 30–33.

Defendants, like the district court, mischaracterize Whitford's claim regarding the burden on his ability to attend powwow. Defendants state that "Appellant

specifically argued that the Clear Conduct policy would prevent him from attending a powwow, should one ever occur." Ans. Br. 27. This is inaccurate. Whitford does not only argue that the Clear Conduct policy prevents him from *attending* a powwow if one is scheduled, he argues that the Clear Conduct policy makes *requesting, organizing, and holding* a powwow impossible. Op. Br. 30–33. Whitford described that there cannot possibly be a powwow on the high side because nearly all incarcerated people on the high side are subject to the Clear Conduct Policy, which bars attendance at this group-worship practice. *See* 3-ER-480 (describing that only two of twenty Native religious practitioners self-identified as being disciplinary-free in the last six months while at pipe ceremony). With few if any people able to request, organize, and join a powwow, powwow is functionally impossible on the high side. Op. Br. 31–33. Given that powwow should occur every year, 3-ER-516, MSP burdens Whitford's religious practice each year Whitford cannot participate in a powwow.

Defendants argue that "just as with his ability to be selected as the pipe carrier, however, the Clear Conduct policy does not apply to the Appellant's ability to request a powwow." Ans. Br. 27–28. To the extent that Defendants assert the Clear Conduct Policy does not apply to Whitford because he is prevented from attending but not requesting a powwow, this argument is without logic. Defendants' argument would mean that there is no substantial burden on Whitford's ability to attend

powwow because he could request a powwow and his religious tenets would somehow be satisfied by watching other people attend powwow while he cannot. Whitford's religious practice requires him to meaningfully participate in a powwow, not simply sit in his cell knowing others can attend a powwow. The numerous other individuals who are banned from attending powwow because of the Clear Conduct Policy have similarly no reason to request a powwow that they cannot attend.

This is a clear violation of RLUIPA. Powwow is a group worship practice that "is a ceremony of the gathering of the people" through group song, dance, and prayer. 3-ER-516. Practices that prevent individuals from engaging in group worship violate RLUIPA. *See Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (citing group worship as an example of religious exercise); *Greene*, 513 F.3d at 988 (upholding plaintiffs right to group practice because it is "in harmony with every other case of which we are aware to have considered this issue"); *Spratt v. R.I. Dep't of Corrs.*, 482 F.3d 33, 38 (1st Cir. 2007) (relevant religious exercise was the maximum security prisoner's ability to preach to other prisoners); *Lovelace*, 472 F.3d at 187–88 (relevant religious exercise was observing Ramadan and attending group prayer services).

Defendants urge this Court to ignore alternative ways Whitford can attend a powwow, including by attending powwow on the low side. Defendants argue that "Appellant explicitly stated that he was not challenging the high side/low side

policies in the case" and they suggest that this Court should not consider this fact now on appeal. Ans. Br. 28. First, their argument is without the appropriate context. The language cited by Defendants regarding Whitford's focus on attending powwow on the high side versus the low side was included because he was objecting to Defendants' summary judgment evidence, which highlighted that Defendants exclusively provided reasons for not allowing Whitford to attend a powwow on the low side without ever addressing his ability to attend it on the high side. 3-ER-480–83.

Indeed, at summary judgment Whitford highlighted why it *is* necessary for this Court to consider the convergence of the many LSP policies that make it impossible for Whitford to practice powwow. He explained that not only does MSP prevent Whitford from going to the low side for any reason which prohibits his attendance of a low side powwow, even if he could go to the low side powwow, the Clear Conduct Policy would prevent him from attending. *Id.*; 3-ER-335; The only viable alternative is to hold a powwow on the high side, but even then, the Clear Conduct Policy still prevents him from attending. 3-ER-335–38. Whitford is caught between a set of impossible circumstances, all of which makes his religious practice inaccessible.

Defendants likely focus on these arguments to make up for the fact that they fail to meet their burden to show any compelling interest in denying Whitford his

29

ability to attend powwow, and that the Clear Conduct rule is the least restrictive means. They provided no justification at summary judgment as to why a powwow could not be considered on the high side, 3-ER-335–38, and continue to fail to do so on appeal. *See supra*, Section II-III. Whitford explained the multitude of reasons why permitting a powwow on the high side, as an exception to the Clear Conduct rule, would address their institutional concerns since it would not require escort staff, would reduce costs, and was often done annually in other facilities. 3-ER-482–3; 2-ER-148–49. And he pointed to the WDOC as a clear example of other prison systems' regular allowance of a powwow without barring those with disciplinary issues from attending. 2-ER-148–49. By failing to directly counter these arguments, Defendants fail to meet their exceptionally high burden, requiring reversal. *See* Op. Br. 45–50; 55–57.

## CONCLUSION

For the reasons stated above, this Court should reverse and remand the district court's partial grant of summary judgment for the Defendants.

## CERTIFICATE OF COMPLIANCE

The foregoing Reply Brief contains 6,995 words excluding the items exempted by FRAP 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: April 2, 2025

*/s/ Amaris Montes*
Amaris Montes

Rights Behind Bars
M St. NW Fnt. 1 #33821
Washington, DC 20033
202-455-4399
amaris@rightsbehindbars.org
*Attorney for Plaintiff-Appellant*
*Makueeyapee Whitford*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

The undersigned filer also certifies that this paper copy of the brief is identical to the version submitted electronically.

Date:  April 2, 2025

/s/ Amaris Montes
Amaris Montes
Rights Behind Bars
M St. NW Fnt. 1 #33821
Washington, DC 20033
202-455-4399
amaris@rightsbehindbars.org
Attorney for Plaintiff-Appellant
Makueeyapee Whitford

32